Good morning, Your Honors. I am Richard Rogers and I am representing the appellant Patricia Cline. I think that the the main point here is the plaintiff appellant did make a Rule 50 motion and it should have been granted because there was absolutely no evidence that the county had attempted to reasonably So that's the primary issue here, whether there is sufficient evidence to support the verdict that the county made these efforts, right? Right. Okay. And it's undisputed that there was an attempt to bring her back to work in 1998 that was unsuccessful, and it's undisputed that she did not, or the county did not bring her back to work. She did not return to work until 2003, late 2003. That's a five-year period and the only reason that she ever returned to work, based on the record in this case, is because she retained a lawyer, and that should not be. At trial, the county was unable to provide any evidence that accommodation was expressed or explored. Reasonable accommodation was even explored during that whole period until Ms. Cline retained a lawyer and she returned to work in 2003, very soon thereafter. So there was a lot of evidence at trial. There was evidence from Ms. Cline herself. There was evidence from the union representative. There was evidence from the people who had positions, the people who were responsible for filling positions, of available positions that Ms. Cline could have filled. And there's an admission that there were at least two or three that she could have been accommodated in, and this did not happen. We have the testimony, the Haskell testimony, I think, probably is the best that the county has. Wouldn't you agree? Ms. Haskell is the only testimony. Right. So why should the why isn't that enough under the deferential standard that we have? Under the which standard? Well, it's a fairly deferential standard at this point, isn't it? I don't know what the deferential standard would be, but let me approach it. It's an interesting concept. I just hadn't thought of it before. I — it seems to me that the county had a duty to explore reasonable accommodation. And it's admitted that they did not do that because they didn't think that she was entitled to reasonable accommodation under the ADA. Where did they admit that? Pardon? Where did they admit that? That's in several places. There was the letter, Exhibit 20, I believe it is, to the EEOC by the county explaining that she wasn't entitled to reasonable accommodation. There's the LERA, L-E-H-R-E, I think it's Margaret LERA, note saying that she'd spoken to Ms. Haskell and Ms. Gamser, and she wasn't entitled to reasonable She could only advocate. She never actually explored reasonable accommodation with anybody. What her job was and what she did was to tell Ms. Kline about positions that Ms. Kline could compete for. And that's pretty clear from the testimony. Those are admissions from Ms. Haskell. She admitted on — in response to questions from the judge that she never advocated for Ms. Kline. She admitted that she never explored reasonable accommodation in any position. With the county — Where did she actually admit that she didn't explore reasonable accommodation? That's the conclusion, but I'm not sure I cited it in the brief. I mean, she testified she was trying to get her a job. She was looking at a number of different positions. They didn't pan out for a variety of reasons. Yeah, I'm just — I set it forth. I'm looking at page 11. She admitted she never discussed accommodation of Ms. Kline with anyone at the reporter's transcript. Page what? I'm on page 11. Of your brief? Of the opening brief. Okay. What part of the record are you citing? I'm referring to the reporter's transcript, pages 23613 to 237-1. 236, okay. 236. I can give you the citations, but I did not bring the reporter's transcript with me. 23613. And what was the second one? To 237-1. So the balance of page 236. Okay. And then following that, she admitted on — from page 237-2 to 239-14 that she sent Ms. Kline to interview for positions and never advised her nor Mr. Snyder that she could place Ms. Kline in any position. In other words, there's — the county has tried to put a spin on the evidence, but when you put your hand on it and hold it down, there's — they didn't do anything that comports with the duty of reasonable accommodation. And responding to your initial question, I suppose that the county has some deferential authority here. They can say we'll give you this accommodation or that accommodation. They have the right to choose. The law doesn't take all of their rights away, but the law does say if you have a disabled employee who can return to work with reasonable accommodation, you have a duty to explore it. Right. But Haskell testified that she did explore a bunch of positions. Now, I understand why you say that was inadequate, but there was evidence in the record that the county argued constituted reasonable accommodation. Right? Well, they can't do that because there wasn't — there wasn't any reasonable accommodation. I mean, it's undisputed she didn't return to work, so during that 5-year period, there was no reasonable accommodation. Haskell testified that she tried to find positions for Klein? She testified that she notified Ms. Klein of positions. She — Hold on. Arguing with me is not going to get you anywhere, counsel. I'm sorry. Did Haskell testify that she attempted to find job opportunities for your client? She testified that she found job opportunities and notified her of available positions. Okay. And isn't it correct on a couple of occasions your client turned down opportunities that Haskell found? She did not interview for jobs that she had — Did she turn down opportunities that Haskell found for her, yes or no? No. Haskell never told her, here is a job, you can have it. Haskell told her, you can apply for jobs. Ms. Klein, in two or three occasions, looked at jobs that she was sent to interview for and determined that they were not compatible. Here's what the record says, at least the part that I'm referring to. Did you offer her either position? I talked to Ms. Klein about the position. Did you offer her either position? I was prepared to offer her those positions. What does that mean? That means after discussing the position with Ms. Klein, if she was interested, I would intervene on her behalf at the departments. They would then have an interview because I think it's important for Ms. Klein that she evaluate the working conditions and the supervisory background. You know, who's going to supervise her given the issues with Mr. Krantz? I thought that was important. And then we would determine if it was a good match and we would proceed to put her in that position. In other words, what she's saying, as I understand it, is there were positions. I could put her in there. I wanted an interview for the reasons, and you may dispute the reasons, that we thought that given her problems with the supervisor, she ought to check it out and then see if she wanted to take them. And she did an interview.  That's undisputed, right? That's undisputed. She did not interview for several, I think it was two or three positions, that Ms. Haskell found and said interview for. It's also undisputed that she interviewed for numerous positions, for numerous positions that she was not offered. And one of them, after she interviewed for the position, they asked for more applicants. They reposted it. So all that Ms. Haskell is saying there, and I submit this, is I found a position that I thought would be suitable, I wanted her to interview for it. If she had wanted the position, I would have advocated for it. But she never – she admitted that she could only advocate, that she had no power to place her on the jury. I would have put her in there. That's what she says. Now, the problem I have with all of this is that if I were – I guess if I were sitting as the trial judge, I'd say, well, you know, there's some evidence. It may be weak on the county's part, but there's some evidence, and I'm going to let that go to – I'm going to let this go to a jury. What's wrong with that? And then the jury finds against you. I renewed the Rule 50. Well, the problem is, is that it's – the jury could have found there was no instruction that they could not count the 1998 accommodation, that they just had to focus on the period when she was out of work. There was no instruction that they couldn't look at the eventual accommodation in 2003. So they could find that Ms. Klein was accommodated when she was returned to work in 2003. You're not raising any error on this appeal about a jury error instruction, are you? No. Well, then why are you? I renewed the Rule 50 motion because as a matter of law, they did not offer her an accommodation. They – she did not turn down an actual offer of an accommodation during that whole period. And she did – she did multiple interviews. She interviewed for lots of positions. There were positions that she testified she could have filled. There were positions that they admitted. I think it was Paula Hawkins, one of the witnesses, admitted that they could have accommodated her. But what – and if you take the position, if you take the position that she turned down a position which I don't think is supported by the evidence, that doesn't end it. Isn't that a jury argument? No. It's an affirmative defense argument. It's an affirmative defense argument. Isn't it? Then that doesn't end it. First of all, there's no affirmative defense, but there is a legal standard. Well, if there's some evidence to support an affirmative defense, you'd agree that the case has to go to the jury, right? If there's some evidence. It doesn't have to be strong evidence. If there's evidence to support an affirmative defense, the case has to go to the jury. It does not – It's your case basically based on the fact you don't think there's any way to interpret  I don't think that's the case. Or it didn't accommodate. I didn't accommodate. And if people – if someone disagrees, you say, well, there's another way to read that evidence, that would have to go to the jury, right? I think so, but I think that you have to stick with the admissions that Haskell made. Would you read those? I didn't bring that portion of the excerpt. Can you read the admissions that you said she made that I didn't ever accommodate? I did not bring the transcripts. They were way too heavy. The other point on that is that the duty to accommodate is a continuing duty. And if one attempt fails, as the attempt in 1998, it's still a continuing duty. And there's no – I think that what you have to – the sum of the evidence is that there isn't sufficient evidence there to support a finding. Did Ms. Haskell or the county comply with the law with respect to reasonably accommodating Ms. Klein during that period? Unless there's other questions, I'll save time for rebuttal. Yeah, you have about six minutes. Thank you for your argument. We'll hear from the county at this time. Ms. Holmes? Thank you. Good morning. Good to be here. I'm Janet Holmes, deputy county counsel, and I had the pleasure of trying this case with Mr. Rogers, and I'm pleased to be here today. There are three issues that I see that are primarily before the Court. We haven't addressed two of them at all. One is the evidentiary ruling and the other is the costs. So I will save some time to talk about those two issues at least briefly at the end. But I am intrigued by the argument as it's progressed so far with respect to the motion for judgment as a matter of law. You do understand, counsel, that if you don't talk about the issues he did not talk about, he can't in rebuttal? Yes. You understand that? Yes. Proceed. Thank you. First, Mr. Rogers indicated that the county was unable to demonstrate that reasonable accommodation was explored until counsel became involved in 2003. And I think this is well briefed in our brief. The record is replete with evidence, particularly from Ms. Haskell, that different attempts at accommodation were made between 2000 and 2003, when Mr. Rogers became involved. What's your best evidence that she was ever offered a job that had a reasonable accommodation? Well, and I think that the offer of the job that you talked about, there were two positions that were explored early on, and the quote that you gave during Mr. Rogers' argument was the one that I would rely on most heavily. But that did not constitute really a job offer. I mean, at the end of the day, it was an exploration of an offer. Right. And I can't say where we are in this case. We have a record that basically, it seems to me, she didn't get an offer of a job that had a reasonable accommodation. And the question is, then, whether or not the Haskell testimony about her attempts I would have placed her, I had some good fits, she didn't want to interview, is enough. And tell me why you think that's enough to get to the jury on your front end. It does raise an interesting question, and this is kind of where the rubber meets the road in reasonable accommodation processes around our State. The problem is this. You have an employer who has a limited number of positions that are open. We have in our county right now more people requesting accommodations than there are even positions that are open, and you have to try to find the right fits. Does the law require you to just slam somebody into a job because they've asked for accommodation? I submit to you the answer is no. You try to find the right fit. That's what reasonable accommodation is about. Reasonable accommodation doesn't require reassignment immediately to a job. Reasonable accommodation is the result of an interactive process, which there's no dispute when on here. A lot of contact back and forth between Ms. Klein and Ms. Haskell. Over an extended period of time, trying to identify the best accommodation that could be afforded to Ms. Klein. Now, the problem is, and I deal with this, frankly, on a daily basis, maybe the county tries too hard to find instead of a reasonable accommodation, the best accommodation. And maybe we can be faulted for that, but that doesn't mean that we haven't worked to develop a reasonable accommodation. Also during this period of time, there's no dispute, she was offered and utilized the vocational rehab system. She actually went back to college and tried to better herself. She was extended a leave of absence during which the county continued to pay her benefits, including her health insurance, for five years while she tried to sort things out. So I just, the record is so strong about the efforts that the county made and the obstacles that Ms. Klein put forth. I won't leave the west, I won't work in the west county, I won't work in the east county, I won't take a typing test, I won't do, take a job with a background, that requires a background check with the sheriff's department. You know, I don't want to work in the health services department. There's the largest department in the county. She's putting up kind of roadblock after roadblock to Ms. Haskell's attempts to accommodate her. I think, you know, it's interesting to think back when I was a young attorney. I practiced in the Federal District Court here as an assistant U.S. attorney, and I was talking to Judge Henderson one time about the jury process and the whole deliberative process that our system of justice in the United States relies on. And I felt at the time that the jury system was terrific for criminal matters and a jury of the peers, and I thought it was a waste of time and inefficient for civil matters. And Judge Henderson said to me that he used to share my view with respect to civil matters, but that he had learned after working on many, many trials and talking to many, many juries that the collective judgment of the members of the jury panel was not only better than the judgment of each individual member, and that's a result of the deliberative process, but better than his judgment alone. And that's what we have. Roberts. Well, I hope you remember that the next time you appear on appeal defending a summary judgment, you won. Right. Well, and that brings me to my second point, which is we're not at set. We're not talking about a summary judgment appeal. A lot of the cases It is, but really, I know the old adage, the perfect is the enemy of the good. But if your argument is that we didn't give her a reasonable accommodation because it wasn't the best accommodation, doesn't that fail as a matter of law? No, I'm not saying that. I'm saying that reasonable accommodation may occur without a job placement. Right. So you can see that if you had denied her a reasonable accommodation because it wasn't the best accommodation, that that would violate statute. Absolutely. And there's no evidence of that. You know, all I'm saying is, you know, in hindsight, we haven't done this, but I do think about it on a daily basis. Maybe we should just assign people and, you know, take it or leave it and see how it works, but that's not the way the county does things. They work very hard. They go through these kind of mutual interview processes. It's sort of what I asked you. If you're denying a reasonable accommodation because you don't think it's the best fit, you're still denying a reasonable accommodation, don't you think? Yeah, but I'm saying that that's not that's not a denial of a reasonable accommodation. We don't always make the best fit, and then people get to move again. I mean, Mr. Rogers talks about the continuing duty, and that happens. You know, you don't always get the best fit, but you try. That's what reasonable is about. Reasonable is not about just plunking somebody in a job. That's not a reasonable accommodation. We try too hard, perhaps, to make a reasonable accommodation, one that works. Well, aren't you required to plunk if you have a reasonable accommodation to make it? Well, that's an interesting question, and ultimately, she did get plunked. And with the help of her counsel, she stopped putting up the roadblocks that she had been for years, and she's in a job and, I think, reasonably happy. But there were roadblocks put up, you know, for years that didn't get dispensed with until counsel became involved. And I don't think that means there's been a lack of reasonable accommodation. You know, the bottom line is I think there's substantial evidence to support the jury's verdict, and that's set forth in the Haskell testimony that's cited in my brief. Also, it's set forth in the testimony of others who said, who testified that their jobs would not be appropriate for Ms. Klein with her limited keyboarding abilities. I just don't see – there's no evidence of juror misconduct. There's ample evidence to support the jury's conclusion, and I don't see that there are any grounds at all for overturning their verdict. I think the Court is correct. The court of appeals sits in a deferential position, v. sub v. a jury. And as long as there is substantial evidence to support the jury's finding, the jury verdict stands. And the judge, the trial judge, also evaluated that, and he was there for the whole trial, and his judgment was that he couldn't substitute his judgment for that of the jury. The substantial evidence supported the verdict, even if the evidence of the typing certificate had been excluded. And with that, I'll submit to any questions. I think the matter's been pretty well briefed. Roberts. Thank you for your argument. Rebuttal. Counsel referred to roadblocks, but what she's really referring to is discussions between Ms. Klein and Ms. Haskell where they're discussing preferences, what Ms. Klein feels she's supposed to – she's able to do, and things like that, and then turning around and holding it against Ms. Klein, saying that she put up roadblocks. It seems to me that if there is a position that Ms. Klein can do, with or without reasonable accommodation, they have a duty to offer it to her. They don't have to give her precisely the position she asks for, if there's more than one, all right? But they can't insist on a demotion when there's a position available that's not a demotion. And these are duties that are set forth in the cases. The concept that a leave of absence is a reasonable accommodation is it applies in a case where a leave of absence is going to allow an employee to recover from something, and it's been applied in different cases and in different circuits. But it's never been applied to say that you can leave somebody off work for five years. The concept is that a leave of absence allows the employer to – well, allows the employee to recover, and the employer is looking to the employee returning to work after a specific amount of time, a reasonable amount of time. It's a hypothetical question. A governmental employer, faced with a request from an employee for a reasonable accommodation, finds a position, locates a position that meets the accommodation requested, whether it's the amount of typing, standing, walking, breaks, whatever. The position that the county has that the governmental employers identify meets that accommodation straight on. And that position is discussed with the employee, and the employee said, I would take that job, except it will require me to add 15 minutes to my commute, and I do not want to do that. And assume for the purpose of my question that drive time has nothing to do with the requested accommodation. Has the county tried to accommodate in that instance, in that hypothetical instance? Yes. They have. And your argument is that did not happen here. My argument is that it did not happen here. And following through on your hypothetical, I think that the employer, whether could say that's a breakdown of the interactive process. We have no further duty to accommodate you. And would have a very strong argument. I think that the cases that say that you have to keep trying are looking at cases where the employee tries an accommodation and it doesn't work. For example, the 1998 accommodation in this case that didn't work. But I don't think that an employee can turn down a position consistent with the law, the case law that's unreasonable accommodation and interactive process. Having been offered a reasonable accommodation, an employee cannot be unreasonable in accepting. I agree. Okay. But I don't think that happened in this case. And I think the evidence is very clear that it did not happen. And understanding the deference question, I think that deference is owed to the jury. But I think that as a matter of law, the Rule 50 motion should have been granted because there actually is no evidence of reasonable accommodation. And there's no affirmative defense. What we're talking about are affirmative defenses under the Jensen case. There were no positions available. The reasonable accommodation was offered and the employee turned it down. Those are all affirmative defenses. And there are no affirmative defenses in this case. They weren't alleged. If you look, we're turning just for an instance or for a minute to the leave of absence as a reasonable accommodation, if Ms. Klein hadn't retained me to get involved, the county would not have accommodated her because Ms. Skamser would never have been involved. She would have gone on applying for positions and not getting them and ad nauseum. So I don't think that you can look at the leave of absence in this case as a reasonable accommodation. If you did that, you'd basically be eviscerating the whole concept of reasonable Letting you apply for jobs while you're on a leave of absence is a reasonable accommodation. And Jensen squarely says that allowing an employee to compete for jobs does not satisfy the duty. Ms. Klein did not put up roadblocks. She was asked for what she preferred. An employee has a duty to know what her limitations are. And for the commuting positions, that would interfere with one of her disabilities or a facet of her disability, which was the depression and the anxiety. But in terms of putting up roadblocks, she was asked what she wanted to do. And she told them, you can't turn that against her and say you're putting up roadblocks and not cooperating. She was cooperating very hard. Throughout the period, she was applying for jobs. She was looking at jobs and trying to evaluate. And for the ones that she didn't apply for, she looked at them and evaluated the job and said she couldn't do it. It took too much typing. Any other questions? I don't see any. Thank you, counsel. Thank both of you. Very interesting argument, interesting case. It's submitted for decision. And the panel will stand in recess for the day. All rise. This court for this session stands adjourned. Thank you.
judges: Hawkins, Tashima, Thomas